OPINION JUDGMENT ENTRY
{¶ 1} Plaintiff-appellant Jeffrey L. Brewer appeals the September 16, 2003 Final Judgment and Decree of the Licking County Court of Common Pleas, Domestic Relations Division. Defendant-appellee is Francine L. Brewer.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} The parties were married on September 6, 1987, and two children were born as issue of the marriage, to wit: Clark, DOB 3-30-1994 and Ona, DOB 12-24-1995. On September 29, 1999, appellant filed a complaint for divorce.
{¶ 3} On November 21, 2001, the magistrate issued a Magistrate's Decision setting forth findings of fact and conclusions of law. Via Order filed July 24, 2003, the trial court addressed appellant's objections to the Magistrate's Decision, and affirmed the Magistrate's Decision.
{¶ 4} On September 16, 2003, the trial court issued its Final Judgment and Decree in the divorce action. The court adopted appellant's shared parenting plan with modifications, including designating appellee as the residential parent of the minor children for school registration purposes, and providing child support as set forth in the Shared Parenting Decree.
{¶ 5} It is from the September 16, 2003 Final Judgment and Decree appellant raises the following assignments of error:
{¶ 6} "I. The trial court erred when it ordered that defendant-appellee should be the residential parent for school purposes of the parties' minor son, which decision is against the weight of the evidence and constitutes an abuse of discretion.
{¶ 7} "II. The trial court erred in designating the defendant-appellee the residential parent for school purposes of the parties' minor daughter, which decision is against the weight of the evidence and constitutes an abuse of discretion.
{¶ 8} "III. The trial court erred in causing the plaintiff-appellant to pay a portion of the guardian ad litem fees generated in this case based on a percentage of the parties' relative income when the percentage of plaintiff-appellant's income was not truly known and when the services of the guardian evidenced bias against the plaintiff-appellant such decision is against the weight of the evidence and constitutes an abuse of discretion.
{¶ 9} "IV. The trial court erred in refusing to admit into evidence the former military records of the defendant-appellee, the same being marked as plaintiffs exhibit 4 denying certain information regarding the defendant-appellee's psychological history to the court in the determination of custody which decision constitutes an abuse of discretion.
{¶ 10} "V. The trial court erred in ordering psychological examinations of the parties post-trial contrary to r.c. 3109.04 which decision constitutes an abuse of discretion.
{¶ 11} "VI. The trial court erred in valuation of certain items of property owned by the parties which decision was against the weight of the evidence.
{¶ 12} "VII. The trial court erred in determining the level of child support against the plaintiff-appellant without current information concerning incomes of the parties', there being no order in over four years which decision is against the weight of the evidence and constitutes an abuse of discretion."
 I, II
{¶ 13} Appellant's first and second assignments of error raise common and interrelated issues; accordingly, we address the assignments together.
{¶ 14} Appellant maintains the trial court erred in designating appellee as the residential parent for school purposes of the parties' minor children, which decision is against the weight of the evidence and constitutes an abuse of discretion.
{¶ 15} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
{¶ 16} Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such decision must not be reversed absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (Citation omitted). The Ohio Supreme Court applied the abuse of discretion standard to custody cases in Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus, 49 Ohio St.3d 21, 550 N.E.2d 178, holding: "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." The reason for this standard of review "is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis, supra at 418,674 N.E.2d 1159. In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."
{¶ 17} R.C. 3109.04(F)(1), which sets forth the factors a trial court must consider in determining the best interest of the child, states, in pertinent part: "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) Whether either parent has failed to make all child support payments * * *; (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense * * *; (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
{¶ 18} In support of his assignments of error, appellant relies upon his allegations concerning stability, the school systems, his level of involvement and his concerns regarding appellee's care of the children.
{¶ 19} The November 21, 2001 Magistrate's Decision sufficiently sets forth and addresses the above statutory factors in deciding to designate appellee as the residential parent. The magistrate specifically finds:
{¶ 20} "81. The Magistrate finds from the overall evidence that the plaintiff is the parent who primarily assists Clark with his school homework. Evidence has been presented suggesting that the plaintiff actually completes Clark's homework rather than simply assists him. The Magistrate finds that this allegation has not been established by a preponderance. The evidence further shows that the plaintiff makes sure that he is able to work with Clark a majority of the time so that his work is completed by the time the boy is with the defendant. It is for this reason that the evidence does not show the defendant assisting Clark relatively much with his homework. The evidence in fact portrays the plaintiff's being very controlling in this regard and almost jealously guarding what he has identified as his `territory.'
* * *
{¶ 21} "83. Evidence has been presented by the plaintiff describing the children as being scared and upset over being cared for by Ms. Church. In light of the overall evidence admitted into the record, it is very difficult to attribute this reaction and state of mind solely to the children. The Magistrate finds that it is much more likely that any such reaction on the part of the children is attributable to their aiming to please the plaintiff who has taken a rigid hard line against Ms. Church to the point that his attitude on this topic has reflected on the children.
* * *
{¶ 22} "85. The Magistrate finds from the overall evidence that the parties have rather contrasting styles and approaches to meting out discipline to the children. Neither uses corporal punishment except in rare occasions and in a reasonable manner. The defendant is a more passive discipliner while the plaintiff is more prone to raise his voice at the children and to intimidate them with a stern tone of voice.
{¶ 23} "86. The evidence establishes that the plaintiff has taken issue with the defendant's management of Ona's personal hygiene. On one occasion he observed that the child displayed a rash or redness in the area of her groin and private parts. The plaintiff had Ona remove her panties and carefully inspected the affected area and took a photograph of the child's labia.
{¶ 24} "87. The evidence establishes that Clark suffers from persistent constipation. The Magistrate finds that the source or cause of this condition has not been established by the overall evidence to a reasonable medical certainty. The plaintiff has taken a strong interest in this condition. It has been the subject of much graphic description in several of his email messages to the defendant. In an effort to document Clark's condition, the plaintiff has made a photograph of Clark's excrement.
{¶ 25} "88. The defendant has alleged in her testimony that on one occasion when Clark was younger and was going through toilet or potty training, the plaintiff became exasperated with him and rubbed some of Clark's feces into the child's face. The Magistrate finds from the overall evidence that this incident has not been established to have occurred by a preponderance. The Magistrate does find, however, that the plaintiff did become exasperated with Clark during the toilet training phase of the child's life and would place himself in the bathroom with the child and harangue him during this process.
* * *
{¶ 26} "99. The Magistrate finds that the defendant is the more nurturing and patient parent of the two parties.
{¶ 27} "100. The Magistrate finds from the overall evidence that the parties have demonstrated an ability to cooperate and make decisions jointly with respect to the children. While at first blush, this may seem not to have been the case, the Magistrate finds that it is significant that the parties have planned, implemented and effected a parenting schedule by which they alternate weeks with the children and manage to provide for the children's needs on a generally consistent basis. This has been the rule notwithstanding the fact that the plaintiff in particular has been critical of aspects of the defendant's efforts. After reflecting on the overall evidence admitted into the record on this issue, the Magistrate finds that while the plaintiff's approach to issues which he perceives to be critical is heavy-handed and sometimes verges on being obsessive, the defendant is used to this sort of manner, accepts it and works with the plaintiff in spite of these points. The Magistrate finds that the parties' abilities to function together in this capacity is attributable to the fact that both, are above average in intelligence, are hard workers and possess the ability to focus on their children.
{¶ 28} "101. The Magistrate finds that as between the parties, the defendant is the party more likely to be able to encourage the sharing of love, affection and respect to the other on the part of the children. The Magistrate finds that while Clark has demonstrated negative impressions of his mother as noted by Dr. Jackson in his psychological evaluation report, the Magistrate is extremely hesitant to attribute these impressions to his having a poor or strained relationship with the defendant. The evidence does not establish or otherwise show that Clark's relationship with the defendant is or has been inappropriate or lacking in any way, aside from the plaintiff's criticisms. The Magistrate is convinced and finds from the overall evidence that Clark is motivated to take this position in order to do what he perceives as pleasing his father.
{¶ 29} "102. The Magistrate finds from the overall evidence that Clark and Ona have a close relationship with each other. The Magistrate further finds that the children's best interest would not be served by an order being entered that would cause them to be physically separated from one another. In so finding, the Magistrate finds that the children have spent their short lives in each other's company. They have strong emotional bonds with each other."
{¶ 30} The magistrate concluded:
{¶ 31} "E. That the parties' parental rights and responsibilities be allocated pursuant to the Shared Parenting Plan proposed by the plaintiff with the defendant being designated as the primary residential parent of both children for school placement purposes. The plaintiff's proposed Shared Parenting Plan filed in this matter on July 27, 2001, is to be adopted by the Court as its order, subject to the following modifications: * * *" { ¶ 32} Upon review, the magistrate sufficiently considered the best interest of the parties' minor children as set forth in the statutory factors in designating appellee as the residential parent for school related purposes. We find there was a substantial amount of credible and competent evidence to support the trial court's designation. Accordingly, we find the trial court did not abuse its discretion, and the first and second assignments of error are overruled.
 III, VII
{¶ 33} Appellant's third and seventh assignments of error raise common and interrelated issues; therefore, we will address the assignments together. Appellant maintains the trial court erred in requiring appellant to pay a portion of the guardian ad litem fees based upon a percentage of the parties' relative income. Specifically, appellant argues his income is not truly known and the services of the guardian evidenced bias against him. Further, appellant argues the trail court erred in determining the level of child support against appellant without current information concerning incomes of the parties.
{¶ 34} Initially, we note appellant did not provide the court with current or more recent information regarding his income.
{¶ 35} The trial court has the discretion to appoint a guardian ad litem for a child pursuant to R.C. 3109.04(B)(2)(a), and to direct payment for those services. The court further has the authority to impute income to a party who is voluntarily unemployed or underemployed. R.C.3119.01. The magistrate found appellant previously earned income of approximately $80,000 per year. The court further found appellant became voluntarily underemployed when he elected to pursue a risky self-employment venture rather than stay in a more secure field of employment.
{¶ 36} In light of the large disparity of income as shown on the child support guideline worksheet, as well as the recommended deviation in child support, the trial court did not error in equitably dividing the guardian ad litem fees according to the parties' respective income ratio, and did not error in its determination of child support. Further, the trial court did not error in ordering appellant pay a portion of the guardian fees despite the guardians alleged negative impact on appellant's case. Appellant's argument belies the role of the guardian in the determination of the best interest of the children.
{¶ 37} Appellant's third and seventh assignments of error are overruled.
 IV
{¶ 38} In the fourth assignment of error, appellant maintains the trial court abused its discretion in refusing to admit into evidence appellee's former military records.
{¶ 39} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027.
{¶ 40} Assuming, arguendo, the trial court erred in excluding the records, appellant has failed to demonstrate prejudice . Rather, appellant's brief states, "While the materials were undeniably from an earlier date, they may have had some information valuable to an expert in the field such as Dr. Jackson. (Emphasis added).
{¶ 41} * * *
{¶ 42} "The court should have admitted into evidence Exhibit 4 whichmay have had an impact on the psychological exam and the ultimate recommendation of the placement of the children in this case." (Emphasis added).
{¶ 43} Appellant's demonstration of "prejudice" is speculative at best. Assuming, arguendo, it was error to exclude the records, in the absence of any demonstration of actual prejudice, we find any error in the exclusion of this evidence to be harmless.
{¶ 44} Appellant's fourth assignment of error is overruled.
 V
{¶ 45} In the fifth assignment of error, appellant maintains the trial court abused its discretion in ordering psychological examinations of the parties post-trial, contrary to R.C. 3109.04.
{¶ 46} The statute provides:
{¶ 47} "(C) Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigation and examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, upon written request. The report shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report. The court may tax as costs all or any part of the expenses for each investigation."
{¶ 48} On December 20, 2000, at the conclusion of the first six days of trial, but prior to the conclusion of the trial as a whole, the magistrate ordered psychological evaluations to be performed on the parties, stating:
{¶ 49} "As the record of this matter reflects, a final contested divorce trial of approximately six days length was recently completed. Among the issues presented during this trial was the defendant's motion for a psychological examination. This motion has been the subject of somewhat heated debate between the parties during a substantial portion of the life of this litigation. The Magistrate had in fact overruled the defendant's earlier request for such an examination due to the lack of a factual basis.
{¶ 50} "At this point in the litigation the Magistrate finds that there is an adequate and considerable factual basis to warrant ordering psychological examinations for BOTH parties. Among the factors that have led the Magistrate are the defendant's recurring memory loss, evidence of past psychological difficulties on the part of the defendant and clear evidence of the plaintiff's controlling and obsessive conduct. As to this last-mentioned item, the Magistrate is particularly concerned wit the plaintiff's conduct in photographing his daughter's genitalia and his son's bowel movement. Finally, the Magistrate is very concerned over the parties' son's serious constipation problem and the relationship of this problem to his parent's combativeness in this litigation.
{¶ 51} "The Magistrate is in fact very hard-pressed to conceive of a case in which it would be more appropriate for psychological evaluations to be ordered. The Magistrate enters this finding being mindful of having presided over this type of litigation for nearly 10 years.
{¶ 52} "The Magistrate further finds evaluations of the parties' psychological health to be in the best interest of their children. The Magistrate finds that such evidence will be of assistance to the Court in determining what parenting arrangement will best serve these children."
{¶ 53} Neither party sought to vacate the order. The parties and children were evaluated in January and March 2001, and a seventh and final day of trial commenced on May 25, 2001. The evaluator, Dr. Jackson, testified, and the parties stipulated to his report. Accordingly, appellant fails to demonstrate where in the record, if at all, he objected to the order at trial. Further, assuming arguendo, the trial court erred in its timing in ordering the psychological examinations, we find appellant has failed to preserve it for our review.
{¶ 54} The fifth assignment of error is overruled.
 VI
{¶ 55} Finally, appellant's sixth assignment of error asserts the trial court erred in the valuation of certain items of property owned by the parties, which decision is against the manifest weight of the evidence.
{¶ 56} A review of a trial court's division of marital property is governed by the abuse of discretion standard. Martin v. Martin (1985),18 Ohio St.3d 292, 480 N.E.2d 1112. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 541 N.E.2d 597. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
{¶ 57} Appellant essentially argues the trial court's valuation of the various items of marital property were against the manifest weight of the evidence, thereby resulting in a division of marital property so unreasonable, it constitutes an abuse of discretion.
{¶ 58} Specifically, appellant cites the trial court's finding the $5,600 tax refund to be a joint refund, when it was based on a return filed by the appellant "married filing separate." The trial court amended the finding of the magistrate and reduced the credit to $4,100 deleting the cost of tax preparation.
{¶ 59} Specifically, pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. Zeefev. Zeefe (1998), 125 Ohio App.3d 600, 709 N.E.2d 208.
The Magistrate's Decision states:
{¶ 60} "43. The Magistrate finds that the plaintiff supplemented his withdrawal of $54,364.00 with a severance pay package of approximately $8,000.00 he received as well as an income tax refund of $5,600 that he received from the IRS based on the parties' joint income tax return."
{¶ 61} At the August 31, 2000 hearing, appellant testified:
{¶ 62} "Q. And the tax refund that was mentioned which you received and which is gone and spent was approximately five thousand dollars, is that correct?
{¶ 63} "A. It was fifty-six hundred. Fifteen hundred went to the tax preparation person and it was married filing separate.
* * *
{¶ 64} "Q. Okay. You were asked about the tax refund. Again would you clarify for the record how you made your filing in 1999?
{¶ 65} "A. Yeah. I — I did extensive research on that with — with my bookkeeper and we made sure that the only deductions that we took and filed married but filing separately was deductions that I was entitled to under the law of the I-R-S.
{¶ 66} "Q. So that was not a return that involved your spouse at this point?
{¶ 67} "A. None whatsoever.
{¶ 68} "Q. So you filed your own return and based on your situation?
{¶ 69} "A. That is correct.
{¶ 70} "Q. Did your wife ever offer to file a joint return with you for 1999?
{¶ 71} "A. Actually the old C-P-A that we had (inaudible) down in Lancaster kept contacting me wanting me to bring my stuff in and set down with both of us to discuss it, but I don't remember her ever saying that she wanted to file jointly, no.
{¶ 72} "Q. To your knowledge has your wife ever provided us information regarding her 1999 tax return to this date?
{¶ 73} "A. We have asked repeatedly for that 1999 tax return. She said that it had to be filed by August 14th and to date I have not seen anything."
{¶ 74} Tr. at 551, 577-578.
{¶ 75} The July 24, 2003 Order addresses the issue, stating:
{¶ 76} "e) The Court will adjust the tax refund to $4100.00. The plaintiff's argument that it should be all his because he filed separately is rejected. The Court corrects findings of Fact 43 to indicate it was a "married but filing separate" tax return. As for defendant's tax return, there was no evidence that defendant ever anticipated a refund. The only information available to the Magistrate was that a proposed tax return was being prepared but that she had signed nothing. The Magistrate properly found no tax refund for the defendant as no evidence was ever presented that one existed, or the amount, if one existed."
{¶ 77} Upon review, we find appellant has not established the tax refund as separate marital property by the required preponderance of the evidence. The mere fact the refund resulted from a "married but filing separately" tax return does not necessarily make the refund separate property. The fact it represents a refund for income earned by appellant during the marriage is sufficient to make it marital property. Accordingly, the trial court did not abuse its discretion in classifying the refund as marital property.
{¶ 78} Appellant also objects to the $5,400 representing his SEP account, arguing the sum was clearly in the CMA account. The trial court addressed the objection in the July 24, 2003 Order, stating:
{¶ 79} "g) The plaintiff objects to the $5400.00 representing his SEP account. He proffers that Exhibit M1 shows account 91F27 that that sum was clearly in the CMA account. The problem with plaintiff's argument is that it, in part, relies on an exhibit (M1) he successfully had excluded from evidence. The only evidence the Court can consider is the testimony of the parties since Exhibits M1 through M7 were excluded from evidence via plaintiff's objections.
{¶ 80} "Based upon the testimony of the parties, the Court finds that the $77,247.00 amount was made up of accounts, #32563, 33660, 34088, and 91F27. The only other information obtained through the parties' testimony was that the son's account was over $10,000.00 and the daughter's account was over $6,000.00. The plaintiff testified his SEP account was $5,500.00 with the balance the following month reduced to $22,883.00 between the children's accounts ($22,883.00 minus $5,500.00 minus $10,000.00 minus $6,000.00) leaves $1,383.00 and results in $10,684.00 for the son and $6,519.00 for the daughter. The $5,500.00, $10,684 and $6,519.00 make up the $22,883.00. Again this is only from the testimony as plaintiff objected to M1 through M7 being introduced into evidence. Therefore plaintiff cannot ask the Court to review and rely on these exhibits."
{¶ 81} "Therefore the $5500.00 SEP account is included in the $22,883.00 balance. However the $5,500.00 is still marital property to be divided."
{¶ 82} By moving the trial court to exclude the exhibits, appellant invited any error on which he now complains. A party will not be permitted to take advantage of an error which he invited or induced the court to make. Center Ridge Ganley, Inc. v. Stinn (1987),31 Ohio St.3d 310, 313, 511 N.E.2d 106.
{¶ 83} Appellant finally submits the court erred in assigning the entire $54,362.00 as the withdrawal amount allegedly taken from the CMA account during the pendency of the proceedings. Appellant asserts the testimony from both parties clearly indicates the sum he withdrew as approximately $40,000.
{¶ 84} Again, the trial court sufficiently addressed the issue in the July 24, 2003 Order:
{¶ 85} "i) The plaintiff next objects to the entire $54,362.00 as being assigned to him as the withdrawal amount. Actually the only testimony as to the amount withdrawn was defendant who indicated it was $55,712.00 (p. 839). The fact that the plaintiff only received $40,000.00 is not dispositive of the amount. The amount the plaintiff actually received may have been after tax withholding, or penalties for withdrawal. The evidence revealed $55,712.00 was the net loss and the Court has no other evidence to break that amount down into specific disbursements. Any reference to subsequent proceedings is clearly prohibited."
{¶ 86} Accordingly, we do not find the trial court erred in its valuation of the property owned by the parties.
{¶ 87} The sixth assignment of error is overruled.
{¶ 88} The September 16, 2003 Final Judgment and Decree of the Licking County Court of Common Pleas, Domestic Relations Division is affirmed.
Hoffman, P.J., Farmer, J. and Boggins, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to appellant.