OPINION
{¶ 1} Defendant-appellant Theodore A. Wagner [hereinafter appellant] appeals from the January 9, 2004, Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division, which granted appellant and plaintiff-appellee Pamela Wagner [hereinafter appellee] a divorce.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant and appellee were married on March 16, 1985. Three children were born as issue of the marriage: Tara (d.o.b. 8/20/87), Glen (d.o.b. 5/27/89) and Troy (dob 2/3/92).
 {¶ 3} On July 1, 2002, appellee filed a complaint for divorce in the Stark County Court of Common Pleas, Domestic Relations Division. The case proceeded to trial on June 3, 2003, and October 21, 2003. In its January 9, 2004, Judgment Entry, the trial court awarded the parties a divorce but declined to award spousal support to appellant. In addition, the trial court determined that appellee's interest in Bias Realty was appellee's separate property. Finally, the trial court determined the manner in which any return of estimated income tax should be divided between the parties.
 {¶ 4} It is from the January 9, 2004, Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 5} "I. The trial court abused its discretion in declining to award spousal support to appellant.
 {¶ 6} "II. Because appellee did not satisfy her burden, the trial court erred when it determined bias realty was appellee's separate property.
 {¶ 7} "III. Because the trial court's order may conflict with federal law, the trial court erred in crafting a distribution of any overpayment of federal estimated tax payments."
 I {¶ 8} In the first assignment of error, appellant contends that the trial court abused it discretion when it failed to award appellant spousal support. We disagree.
 {¶ 9} As a general matter, we review the overall appropriateness of the trial court's award of spousal support under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. Thus, we must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 10} Pursuant to R.C. 3105.18(C) (1), in making a determination concerning spousal support, the trial court must consider certain factors. Revised Code 3105.18(C)(1)states, in relevant part, as follows:
 {¶ 11} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 12} "(a) The income of the parties, from all sources * * *;
 {¶ 13} "(b) The relative earning abilities of the parties;
 {¶ 14} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 15} "(d) The retirement benefits of the parties;
 {¶ 16} "(e) The duration of the marriage;
 {¶ 17} "(f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 18} "(g) The standard of living of the parties established during the marriage;
 {¶ 19} "(h) The relative extent of education of the parties;
 {¶ 20} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 21} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 22} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 23} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 24} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 25} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 26} In its Final Entry, the trial court made the following findings and conclusions:
 "FINDINGS OF FACT {¶ 27} "This is an eighteen year marriage. . . .
 {¶ 28} "6. The Court finds the husband's gross income to be $27,998 and the wife's annual gross income to be $429,562. According to the child support schedules and worksheet calculations, the Court finds that annual child support for three children is $25,823. The husband's obligation is $1,555, or 6%, and the wife's obligation is $24,268, or 94%. (See attached worksheet).
 {¶ 29} "7. The husband, age 54, is in good physical, mental and emotional health. The husband received a degree in Aerospace Engineering from Kent State University in 1971, a BS decree [sic] from Akron University, and a masters degree in professional photography from the Professional Photographers of America.
 {¶ 30} "8. This is the husband's third marriage. He has four adult children by his prior marriages.
 {¶ 31} "9. The husband is self-employed and runs a photography studio. The husband's income tax returns reflect Schedule C losses in the amount of $13,935 in 2001, $11,064 in 2000 and $17,060 in 1999. The husband specializes in photography studio and sports photography. He is the professional photographer for the Cleveland Browns, Penn State, the Firestone Country Club and others. Based upon his experience, the husband is clearly capable of far greater earnings than have been realized during this marriage. Based upon the most recent tax return, the Court finds that the husband's income from all sources amounts to $27,988.
 {¶ 32} "Since his separation, the husband has had a relationship with his girlfriend. The evidence indicates that he primarily resides with her and that she pays the household expenses.
 {¶ 33} "10. The wife, age 48, is in good physical, mental and emotional health. She has a degree in nursing and is employed at Aultman Hospital as an educational specialist and a nurse. She has been employed at Aultman Hospital for 23 years. She works between 32 and 36 hours per week. She has a retirement plan, hospitalization, dental and life insurance benefits through her employment.
 {¶ 34} "11. The parties IRS return for 2001 (the most recent filed) indicates they had the following income: Husband — $27,988; Wife — $429,562.
 {¶ 35} "Each party presented a monthly expense statement. The husband's expenses are $1,794, and the wife's expenses are $7,552.
 {¶ 36} "13. The parties standard of living was upper middle class.
 . . . {¶ 37} Pensions/Retirement/Profit Sharing/Deferred Benefit
 {¶ 38} "The wife is the owner of a Retirement Savings Plan through Aultman Hospital. Pursuant to the report of Pension Evaluators, the entire account is valued at $67,285.81. The martial portion of this account is valued at $47,958.76. The wife is also a participant in the Thorne Management 401(K) plan with [sic] the most recent statement before trial shows to have a value of $24,064.74. The husband has an STRS Pension of undetermined but minimal value.
 . . . {¶ 39} Conclusions of Law and Order
 . . . {¶ 40} Spousal Support
 {¶ 41} "The Court considered all of the spousal support factors and finds that spousal support is not appropriate or reasonable. [Section]3105.18(C)(1)." Final Entry, January 9, 2004.
 {¶ 42} Upon review, we find that the trial court's award of spousal support did not constitute an abuse of discretion. The trial court clearly considered the factors set forth in R.C. 3105.18(C) in determining the amount and duration of spousal support. Further, the record supports the trial court's finding that appellant has made a voluntary choice to be under-employed, and demonstrates that appellant is middle-aged, in good health and self-supporting. Accordingly, we find that the trial court's decision to decline to award spousal support to appellant was not arbitrary, unreasonable or unconscionable.
 {¶ 43} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 44} In the second assignment of error, appellant contends that the trial court erred when it determined that Bias Realty was appellee's separate property because appellee did not satisfy her burden to demonstrate that it was separate property. We disagree.
 {¶ 45} Characterization of property as separate or marital property is a mixed question of law and fact which must be supported by sufficient, credible evidence. See Kelly v. Kelly, 111 Ohio App.3d 641,676 N.E.2d 1210. The party seeking to establish an asset as separate property must present evidence to trace the asset and show by a preponderance of the evidence that the asset is separate property.[1]
R.C. 3105.171; Zeefe v. Zeefe (1998), 125 Ohio App.3d 600,709 N.E.2d 208.
 {¶ 46} The following evidence was adduced concerning Bias Realty. Appellee owns an interest in Bias Realty. A certified public accountant valued appellee's interest to be $740,000.00. Another expert valued appellee's interest at $300,000.00.
 {¶ 47} Bias Realty was formed in 1995 by Glenn and Shirley Thorne, appellee's parents.[2] Bias Realty was formed at the same time that other estate planning entities were formed and was a part of an integrated estate plan.
 {¶ 48} At the time it was formed, the only assets of Bias Realty were the agreements of Glenn and Shirley Thorne's children, including appellee, to contribute $330 each and Glenn Thorne's agreement to pay $10 for a total, initial capitalization of $1,000. After being formed, Bias Realty borrowed 3.5 million dollars in two separate loans. One of the loans was for real estate and the other was for equipment. Each loan was signed by Glenn Thorne, Shirley Thorne and Bias Realty, as co-obligors. Using the borrowed funds, Bias Realty purchased a property six blocks from an existing Thorne's Bi Lo store and a new grocery store was built at that location. After that store was completed, Glenn and Shirley Thorne closed their old store and opened a new store in the same name at the new location. Thus, in effect, the Thornes transferred the entire goodwill of the previous store to the new store.
 {¶ 49} Appellant testified that he was the person who wrote most of the checks and maintained the financial records during the marriage. He had no recollection of a check for $330 issued by his wife to Bias Realty and no record of any such payment.
 {¶ 50} Appellee testified that she did not make a payment of $330 to Bias Realty. Appellee stated that if such a payment were made, it must have been made by appellee's father on her behalf.
 {¶ 51} Michael Zelenik, a certified public accountant, testified about the formation and operation of Bias Realty. Zelenik stated that a thorough review of the records of Bias Realty failed to find any contribution of either appellant or appellee to Bias Realty and that it would not be unusual for this amount to be a "paper transaction" meaning that it did not actually involve a transfer of funds. Zelenik testified that the value of Bias Realty was created by the transfer of the goodwill and ongoing business operations of the existing store into Bias Realty and loans personally guaranteed by Glenn and Shirley Thorne.
 {¶ 52} Based on this testimony, the trial court concluded that appellee's interest in Bias Realty was the separate property of appellee. In so doing, the trial court found that appellee did not make an actual contribution of marital funds to Bias Realty. The trial court noted that even if appellee had contributed $330 in marital funds to Bias Realty, it was clear that the value of appellee's interest in Bias Realty was a result of the gifts of Glenn and Shirley Thorne and not the $330 initial capitalization.
 {¶ 53} We conclude that the trial court's finding is supported by sufficient, competent evidence. The evidence supports the conclusion that appellee did not make a contribution of marital funds to Bias Realty and that even if there were such a contribution, the value of appellee's interest was not the result of that small contribution.
 {¶ 54} Accordingly, we overrule appellant's second assignment of error.
 III {¶ 55} In the third assignment of error, appellant argues that because the trial court's order may conflict with federal law, the trial court erred in ordering a distribution plan for any refunds from federal estimated tax payments. We find no reversible error.
 {¶ 56} In the final entry, the trial court determined how any income tax refund must be allocated between the parties. The trial court ordered as follows:
 {¶ 57} "The Court finds that the tax refunds generated by the parties' separate returns are marital property. Each party may file separate returns and obtain the refunds set forth above. Should the parties agree to file a joint return for 2001, or choose to file a joint amended return amending separate returns already filed, then each party shall receive from any such joint refund the amount which they would have received if they had filed separately less any amounts already received by reason of their individual filing. The balance of any joint return refunds shall thereafter be divided equally between the parties." Final Entry, January 9, 2004.
 {¶ 58} Upon appeal, appellant argues that federal law addresses the method by which tax returns shall be paid to a taxpayer. Appellant argues that federal law preempts state law in this area and contends that the trial court was without jurisdiction to amend or modify the federal law.
 {¶ 59} First, we note that appellant does not actually argue that the trial court's order conflict's with federal law. Appellant only contends that the order "may" conflict with federal law. Appellant does not cite any federal law or case law to support his argument.
 {¶ 60} Further, tax refunds are marital assets which are subject to division in divorce proceedings. See Frye v. Frye (March 31, 1994), Franklin App. No. 93 APF09-1218 and Brewer v. Brewer, Stark App. No. 2003CA00087, 2004-Ohio-3531. Even if federal IRS regulations determine whose name shall be on the refund check, the issue of division of marital property is an issue governed by state law. The trial court did not issue an order to the IRS, but, rather, issued an order to the parties directing division of an IRS refund, if received.
 {¶ 61} We find no grounds for reversal. Appellant's third assignment of error is overruled.
 {¶ 62} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Revised Code 3105.171(A) states as follows, in relevant part:
{¶ b} "As used in this section:
{¶ c} "* * *
{¶ d} "(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 . . .
{¶ e} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
{¶ f} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
{¶ g} "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."
[2] "Bias" was appellee's mother's maiden name.