[Cite as *Dindal v. Dindal*, 2009-Ohio-3528.]


# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# HANCOCK COUNTY


LISA DINDAL,

   PLAINTIFF-APPELLEE,                       CASE NO. 5-09-06

   v.

JERRY DINDAL,                                **O P I N I O N**

   DEFENDANT-APPELLANT.


Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2007-DR-0043

**Judgment Affirmed**

**Date of Decision:  July 20, 2009**


APPEARANCES:

   *John C. Filkins* for Appellant

   *Howard A. Elliott* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Jerry Dindal (hereinafter "Jerry"), appeals the Hancock County Court of Common Pleas' judgment entry granting plaintiff-appellee's, Lisa Dindal's (hereinafter "Lisa"), complaint for divorce. For the reasons that follow, we affirm.

{¶2} Jerry and Lisa were married on May 23, 1997. (Doc. No. 1). The parties had a child together prior to the marriage, Danielle Dindal (D.O.B. 1/04/95). (Id.). Jerry and Lisa both have one child from their previous relationships.

{¶3} On February 9, 2007, Lisa filed a complaint for divorce. (Id.). On September 4, 2007, the matter came on for a final hearing. On December 7, 2007, the magistrate issued his decision. (Doc. No. 49). On February 11, 2008 and February 25, 2008, Jerry filed objections and supplemental objections to the magistrate's decision. (Doc. Nos. 54-55). The trial court overruled the objections on December 4, 2008. (Doc. No. 59).

{¶4} On February 14, 2009, the trial court issued its final judgment of divorce. (Doc. No. 60). On March 9, 2009, Jerry filed a notice of appeal. (Doc. No. 68). Jerry now appeals raising five assignments of error for our review. We have elected to address Jerry's assignments of error out of the order they appear in his brief to this Court.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO REQUIRE THE APPELLEE TO ESTABLISH THE VALUE OF HER 401K AND PENSION.**

{¶5} In his second assignment of error, Jerry argues that the trial court erred as a matter of law when it failed to require Lisa to establish the value of her 401(k) and pension; and therefore, the trial court could not have equitably divided the parties' retirement plans. Lisa, on the other hand, argues that the trial court did not err in failing to value her 401(k) and pension since there was no evidence in the record to support a value. Furthermore, Lisa argues that Jerry was provided with discovery relating to the value of these assets, but never raised the issue at the hearing. Lisa also points out that there was no evidence presented of any great disparity between the values of the parties' pensions or 401(k) accounts; and therefore, the trial court did not abuse its discretion by ordering that each party retain their respective pensions and 401(k) accounts subject to any loans on those assets. We agree with Lisa.

{¶6} Retirement benefits acquired during a marriage are marital assets that must be equitably divided between the spouses in a final judgment of divorce. R.C. 3105.171(A)(3)(a)(i), (ii); *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292. "Although an equal division is a starting point when allocating marital property and debt, a decision need not be equal to be equitable." *Shaffer v.*

*Shaffer*, 3d Dist. No. 11-04-22, 2005-Ohio-3884, ¶25, citing R.C. 3105.171(C)(1); *Lust v. Lust*, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶25. Trial courts generally have broad discretion in determining the equitable distribution of property in divorce cases; and therefore, we review the overall appropriateness of the trial court's property distribution under and abuse of discretion standard. *Martin v. Martin*, 3d Dist. No. 9-03-47, 2004-Ohio-807, ¶6, citing *Lust*, 2002-Ohio-3629; *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 635 N.E.2d 308; *Martin v. Martin* (1985), 18 Ohio St.3d 292, 480 N.E.2d 1112. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶7} The evidence presented regarding the parties' 401(k) and retirement accounts at the final hearing was limited. Jerry estimated that the value of his 401(k) was around $4,400 and the value of his retirement account was around $20,000. (Sept. 4, 2007 Tr. at 23). Jerry testified that he worked at his place of employment for eleven (11) years. (Id.). Plaintiff's exhibit one, a statement of Jerry's 401(k) account, revealed the value of this account to be $4,127.95. (Id. at 24-25); (Plaintiff's Ex. 1). Jerry also testified that he has an outstanding $1,500 loan against his 401(k). (Sept. 4, 2007 Tr. at 26-27). Plaintiff's exhibit one confirmed that Jerry has an outstanding loan of $1,379.15. (Plaintiff's Ex. 1). With regard to Lisa's accounts, Lisa testified that she has 401(k) and retirement

accounts through her employer, Whirlpool, where she worked for twenty-three (23) years. (Sept. 4, 2007 Tr. at 173-74). She testified that she began earning these benefits prior to her ten-year marriage. (Id. at 174). She also testified that she received one hundred dollar ($100) bonds from her employer, sixteen (16) of which were received during the marriage. (Id. at 174-75, 201). Lisa estimated that the bonds were currently worth half of their face value, or $50 each, since they take seventeen (17) years to mature. (Id. at 175, 201). Lisa testified that seventeen dollars ($17) is deducted weekly from her paycheck for an outstanding loan against her 401(k). (Id. at 176). The record indicates the amount of Lisa's outstanding 401(k) loan is $7,470.93. (Doc. No. 42). No other testimony regarding Lisa's 401(k) or retirement accounts was presented at the hearing. The only other evidence in the record regarding the amount of Lisa's 401(k) is the figure she provided on her personal history and financial affidavit, which was $60,000. (Doc. No. 13). On the other hand, neither party testified to any great disparity between the values of their retirement and 401(k) accounts.

{¶8} Based upon this limited evidence, the trial court concluded that "[e]ach Party should keep free and clear of the other, any retirement, pension, 401(k), or other benefits they may have in their individual names from employment. Each Party shall hold the other harmless as to any loans against any of these benefits." (Feb. 13, 2009 JE, Doc. No. 60); (See, also, Dec. 7, 2007 JE,

Doc. No. 49). The magistrate also made a finding that, "[b]oth parties have retirement benefits, although the testimony does not accurately show how much each one has. However, neither party testifies to any huge disparity in this area." (Dec. 7, 2007 JE, Doc. No. 49, ¶46).

{¶9} We find that Jerry's arguments lack merit. Although it has been held that a trial court abuses its discretion when it fails to determine the market value of property it divides in a divorce, Jerry has waived this argument by his failure to present any evidence regarding the value of Lisa's retirement or 401(k) accounts in the trial court. *Eisler v. Eisler* (1985), 24 Ohio App.3d 151, 493 N.E.2d 975; *Pearlstein v. Pearlstein*, 11th Dist. No. 2008-G-2837, 2009-Ohio-2191, ¶147; *Ferrero v. Ferrero* (June 8, 1999), 5th Dist. No. 98-CA-00095, at *6; *Morris v. Morris* (Aug. 22, 1990), 4th Dist. No. 89CA27, at *3. See, also, *Kauble v. Pfeiffer*, 3d Dist. No. 9-03-36, 2003-Ohio-6988, ¶¶37-38. Jerry is precluded from raising this issue under the invited error doctrine as well. *Roberts v. Roberts*, 10th Dist. No. 08AP-27, 2008-Ohio-6121, ¶21, citing *Hruby v. Hruby* (June 11, 1997), 7th Dist. No. 93-C-9 (husband waived any argument regarding the valuation of marital property when he failed to submit any evidence of valuation at trial); *Davis v. Davis*, 8th Dist. No. 82343, 2003-Ohio-4657, ¶18.

{¶10} Aside from these procedural bars, we reject the merits of Jerry's arguments for three reasons. First, *Eisler*'s rule—that a trial court abuses its

discretion when it fails to determine the market value of property it divides in a divorce—has been more recently modified to: a trial court errs when it fails to determine the value of each piece of property it considered "whenever feasible." *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 109, 546 N.E.2d 950.  Given the lack of evidence regarding the value of Lisa's pension or 401(k), this case presents the sort of fact pattern for which the modified rule in *Buckles* was created. Second, several districts have rejected Jerry's argument that it is the trial court's duty to require the parties to submit more evidence on the issue of asset valuation. *Roberts*, 2008-Ohio-6121, at ¶¶21-25; *Hruby*, 7th Dist. No. 93-C-9, at *3-4; *Walls v. Walls* (May 4, 1995), 4th Dist. No. 94-CA-849, at *5 ("In a divorce case, as in any other case, it is the responsibility of the parties to put forth the evidence they believe is relevant and necessary for a just decision. Each party tries his own case, and the court reaches a decision based on the evidence that the parties have presented. A court does not abuse its discretion where the evidence before it to show the value of the marital assets is vague.").

{¶11} Third, when presented with a similar fact pattern as presented here, the Court of Appeals for the Seventh District rejected the bright line rule that Jerry sets forth. *Pitzo v. Pitzo* (Mar. 2, 1989), 7th Dist. No. 88-C-10.  The husband-appellant in *Pitzo*, like Jerry herein, appealed the trial court's equal division of his pension, arguing that the trial court erred because it did not have evidence of the

pension's present market value. 7th Dist. No. 88-C-10, at *1. In support of his argument, the husband-appellant in *Pitzo* argued that the trial court violated the rule in *Eisler*, supra. Id. The wife-appellee in *Pitzo*, like Lisa herein, argued, in pertinent part, that her husband's failure to provide accurate information at the hearing regarding the value of his pension prevented him from arguing this issue on appeal. Id.

{¶12} Addressing the assignment of error, the Court in *Pitzo* found *Eisler* distinguishable based on the fact that *Eisler* involved several unvalued assets, not merely a pension. Id. The Court also rejected both parties attempt to establish what it called bright line rules, stating:

> **Each party proposes a blanket rule applicable in all situations. Appellant argues that in any case where the value of an asset is undetermined, the court must require the parties to submit evidence or divide the asset equally. Appellee argues that in any case where evidence is not introduced, an appellate court must decline review. This court has consistently held that '* * * flat rules have no place in determining a property division.' *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 356 [20 O.O.3d 318]. See, also, *Berish v. Berish* (1982), 69 Ohio St.2d 318, 320 [23 O.O.3d 296]; *Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 357 [23 O.O.3d 320]; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218. These cases hold that '* * * [a] trial court must have discretion to do what is equitable upon the facts and circumstances of each case.' *Cherry, supra,* at 355; *Berish, supra,* at 320; *Koegel, supra,* at 357; *Blakemore, supra,* at 218.**
>
> **Accordingly, a reviewing court is limited to determining whether, considering the totality of circumstances, the trial court abused its discretion. *Id.* at 218-220.**

7th Dist. No. 88-C-10, at *2, quoting *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 221-22, 459 N.E.2d 896. We find the reasoning of *Pitzo* and *Briganti* persuasive here. Reviewing the totality of the facts and circumstances in the record, we cannot conclude that the trial court abused its discretion in its division of the parties' retirement benefits. Since the values of these assets were not clearly established by the evidence at trial, the trial court awarded each party their respective retirement and 401(k) accounts subject to any loans he/she may have taken against their accounts. Aside from that, as the trial court noted, there was no evidence presented at the hearing to suggest that the value of the parties' retirement or 401(k) assets was greatly disparate. Under these circumstances, we cannot find that the trial court abused its discretion.

{¶13} Jerry's second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING SPOUSAL SUPPORT TO APPELLEE IN CONTRAVENTION OF R.C. 3105.18.**

{¶14} In his first assignment of error, Jerry argues that the trial court erred in awarding Lisa spousal support because the trial court failed to consider: he had to acquire a separate residence for eight months prior to the final hearing; Lisa was able to live in the marital home without paying the mortgage for the same eight months; the debt to income ratio of the parties; Lisa's failure to establish financial

need; the value of Lisa's retirement benefits since the value was not determined; the parties' standard of living; and Lisa received most of the marital property. Lisa, on the other hand, argues that the trial court properly considered the R.C. 3105.18 factors, and that living expenses is not among those enumerated in the statute. She further argues that the parties have about a $13,000/year income disparity. Under these circumstances, Lisa argues that the trial court did not abuse its discretion by awarding her spousal support.

**{¶15}** R.C. 3105.18 provides, in relevant part:

**(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:**

**(a)     The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**
**(b)     The relative earning abilities of the parties;**
**(c)     The ages and the physical, mental, and emotional conditions of the parties;**
**(d)     The retirement benefits of the parties;**
**(e)     The duration of the marriage;**
**(f)     The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**
**(g)     The standard of living of the parties established during the marriage;**
**(h)     The relative extent of education of the parties;**
**(i)     The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**
**(j)     The contribution of each party to the education, training, or earning ability of the other party, including, but not limited**

**to, any party's contribution to the acquisition of a professional degree of the other party;**
**(k)    The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**
**(l)    The tax consequences, for each party, of an award of spousal support;**
**(m)    The lost income production capacity of either party that resulted from that party's marital responsibilities;**
**(n)    Any other factor that the court expressly finds to be relevant and equitable.**

A trial court must make specific findings "to enable a reviewing court to determine the reasonableness of its order to grant or deny a request for spousal support and that the relevant factors within R.C. 3105.18 were considered." *Hendricks v. Hendricks*, 3d Dist. No. 15-08-08, 2008-Ohio-6754, ¶31, quoting *Lee v. Lee*, 3d Dist. No. 17-01-05, 2001-Ohio-2245.  However, a trial court's failure to "specifically enumerate" the factors is not reversible error. *Hendricks*, 2008-Ohio-6754, at ¶31, citations omitted.  Appellate review of a trial court's spousal support determination is under an abuse of discretion standard. Id. at ¶29, citing *Siefker v. Siefker*, 3d Dist. No. 12-06-04, 2006-Ohio-5154, ¶15.  An abuse of discretion is more than an error of law; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{**¶16**} The magistrate began his spousal support analysis by setting forth R.C. 3105.18. (Dec. 7, 2007 JE, Doc. No. 49). Reviewing the statutory factors, the magistrate found:

> **44. The Defendant in this matter has significantly more income annually than the Plaintiff. The Defendant's income for child support purposes exceeds $63,000.00 each year, while the Plaintiff earns $36,000.00. Additionally, the Plaintiff is to receive $603.00 each month in child support from the Defendant. Even with adjustments for child support, both paid and received, the Plaintiff's "income" is almost $13,000.00 a year below the Defendant's. ($63,000.00 - $7,200.00 = $55,800.00 vs. $36,000.00 + $7,200.00 = $43,200.00). This calculation does not take into account any sums either party receives as child support for their other children.**
>
> **45. Neither party testifies to any significant health issues that would prevent them from working. There is also no testimony regarding the relative earning capacities of the parties.**
>
> **46. Both parties have retirement benefits, although the testimony does not accurately show how much each one has. However, neither party testifies to any huge disparity in this area.**
>
> **47. The parties have been married 10 years. Both parties have completed high school.**
>
> **48. Other factors set forth above either have no impact on the spousal support analysis of the parties have not provided any testimony on these issues.**
>
> **49. Based upon the testimony presented by the Defendant, if the court were to consider his living expenses, the testimony shows that his average monthly expenses total approximately $2,900.00 per month. This figure takes into account the amounts contained in "Plaintiff's Exhibit 4" and updates or corrections testified to by the Defendant.**

**50. Based upon the testimony and evidence presented, having considered all of the relevant factors set forth above, whether or not specifically mentioned herein, the undersigned concludes that the Defendant should pay spousal support to the Plaintiff in the amount of $300.00 per month for a period of 24 months. This support should be taxable to the Plaintiff as income and deductible by the Defendant. The court should not retain jurisdiction over this issue.**

(Id.). The trial court, after reviewing the magistrate's decision, concluded that "[b]ased upon the testimony and evidence presented to the court, Defendant shall pay the amount of $300.00 per month for a total of twenty-four (24) continuous months to Plaintiff." (Feb. 13, 2009 JE, Doc. No. 60).

{¶17} It is clear that the trial court reviewed the applicable R.C. 3105.18(C)(1) factors and specifically found that those factors not expressly mentioned in its entry were either inapplicable or undeterminable from the evidence presented at the final hearing. (Dec. 7, 2007 JE, Doc. No. 49). Based upon evidence in the record, the trial court determined that Lisa was entitled to $300.00 per month for twenty-four (24) months. We do not find this spousal support order to be unreasonable, arbitrary, or unconscionable, and Jerry's arguments do not persuade us otherwise. We reject Jerry's argument that the trial court erred by not considering Lisa's retirement benefits since he failed to present any evidence on this issue. We also reject Jerry's contention that the trial court erred by failing to consider his living expenses because "living expenses" is not among the enumerated R.C. 3105.18 factors, and, additionally, the trial court

- 13 -

noted that it was aware of Jerry's living expenses when it determined the spousal support award. *Derrit v. Derrit*, 163 Ohio App.3d 52, 2005-Ohio-4777, 836 N.E.2d 39, ¶32; (Dec. 7, 2007 JE, Doc. No. 49). For all these reasons, we conclude that the trial court did not abuse its discretion by ordering Jerry to pay the aforementioned amount of spousal support.

{¶18} Jerry's first assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN ALTERNATING THE DEPENDENCY EXEMPTION FOR THE MINOR CHILD BASED UPON THE FACT THAT THE APPELLANT IS IN A HIGHER TAX BRACKET THAN THE APPELLEE.**

{¶19} In his third assignment of error, Jerry argues that the trial court erred by alternating the child dependency exemption and that he should have been given the exclusive right to the exemption as he is in a higher tax bracket. Lisa, on the other hand, argues that the trial court did not err since: the parties agreed to alternate the tax exemption at the hearing; as residential parent, she is the presumed recipient of the exemption; and the trial court considered other relevant factors besides just the parties' tax brackets. We agree with Lisa that the trial court did not err with regard to this issue.

{¶20} R.C. 3119.82 provides, in pertinent part:

**Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall**

**designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes as set forth in section 151 of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended. If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. * * * In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.**

R.C. 3119.82 provides that if the parties agree on which parent shall claim the exemption then the court "shall" designate that parent as the parent to receive the exemption. At the hearing, both Lisa and Jerry testified that they agreed that the tax exemption should alternate every other year—Lisa claiming Danielle in the odd numbered years and Jerry claiming Danielle in the even numbered years. (Sept. 4, 2007 Tr. at 12, 140-41). The record also contains a pre-trial statement submitted by Lisa containing a list of parties' stipulations, including that "[t]he Parties would alternate the tax exemption for the minor child." (Doc. No. 42). Since the record demonstrates that the parties agreed on this issue, we cannot conclude that the trial court abused its discretion by awarding the tax exemption consistent with the parties' agreement. *Glassner v. Glassner*, 5th Dist. No. 2005CA00137, 2006-Ohio-514, ¶¶60-64; *Carpenter v. Carpenter*, 7th Dist. No. 07

CO 344, 2009-Ohio-1199, ¶62. See, also, *Harris v. Harris*, 11th Dist. No. 2002-A-81, 2003-Ohio-5350, ¶¶34-36. Aside from that, we reject Jerry's argument that, pursuant to *Singer v. Dickinson* (1992), 63 Ohio St.3d 408, 588 N.E.2d 806, he was exclusively and automatically entitled to the child tax exemption by virtue of the fact that he is in a higher tax bracket than Lisa. Although R.C. 3119.82 codified *Dickinson*'s rule—that a nonresidential parent *may* receive the tax exemption when it produces a net tax savings for the parents in the best interests of the child—R.C. 3119.82 also added several other new factors that a trial court must consider when allocating the tax exemption. *Bailey v. Bailey*, 12th Dist. No. CA2004-02-017, 2004-Ohio-6930, ¶27. These additional statutory factors effectively "increase[ed] the court's discretion in determining best interests to a level beyond that of merely net tax savings." Id. Additionally, the rule in *Dickinson* was discretionary, not mandatory. *Will v. Will* (1996), 113 Ohio App.3d 8, 12-13, 680 N.E.2d 197. For all these reasons, we cannot find that the trial court abused its discretion.

{¶21} Jerry's third assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ERRED IN ORDERING THAT THE PARTIES FILE AN AMENDED TAX RETURN FOR THE TAXABLE YEAR 2006 BASED UPON APPELLEE'S FAILURE TO ESTABLISH ANY BASIS FOR SAME. FURTHERMORE, GIVEN THE FACT THAT THE PARTIES WERE SEPARATED THROUGHOUT THE TAXABLE YEAR**

**2007 IT WAS ERROR FOR THE TRIAL COURT TO ORDER THE PARTIES TO FILE JOINTLY IN THE TAXABLE YEAR 2007.**

{¶22} In his fourth assignment of error, Jerry argues that the trial court erred by ordering the parties to file an amended 2006 tax return and to file jointly for the taxable year 2007.  Jerry argues that he should be entitled to keep the entire tax refund from the 2006 tax return since he was forced from the marital home and needed to provide furnishings for his new apartment.  With regard to the 2007 tax return, Jerry argues that he and Lisa lived separately for almost the entire year, so they should file separately.  Lisa, on the other hand, argues that the trial court did not abuse its discretion because Jerry took the entire tax refund from 2006, and the parties were effectively married all of 2007 since the final hearing was held in September 2007.  We agree with Lisa that the trial court did not abuse its discretion.

{¶23} When acting within its broad discretion in making an equitable division of marital property in a divorce proceeding, a trial court has the authority to order a spouse to amend his or her federal tax return. *Bowen v. Bowen* (1999), 132 Ohio App.3d 616, 636-37, 725 N.E.2d 1165; *Cherry v. Cherry* (Dec. 31, 1998), 6th Dist. No. OT-98-011, at *3; *Andrew v. Andrew* (Dec. 23, 1997), 3d Dist. No. 7-96-04, at *6-7, citing *Neeley v. Neeley* (Nov. 14, 1984), 1st Dist. No. C830928. Appellate review of the trial court's decision in this regard is limited to

whether the trial court abused its discretion. *Bowen*, 132 Ohio App.3d at 637; *Andrew*, 3d Dist. No. 7-96-04, at *7; *Cherry*, 6th Dist. No. OT-98-011, at *3. An abuse of discretion is more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶24} R.C. 3105.171(A)(2)(a) provides that "during the marriage" for purposes of equitably dividing marital assets, as defined in division (A)(3)(a), generally means from the date of the marriage to the date of the final hearing. A trial court does not abuse its discretion by finding that a tax refund received during the marriage is marital property, even when the spouse receiving the refund filed separately. *Brewer v. Brewer*, 5th Dist. No. 2003CA00087, 2004-Ohio-3531, ¶¶58-77.

{¶25} The final hearing occurred on September 4, 2007. (Doc. Nos. 41, 60). Jerry testified at the hearing that he filed his taxes married but separate in 2006 and claimed the parties' minor child. (Sept. 4, 2007 Tr. at 28-29). Jerry testified that he received a $5,022.00 federal tax refund and $354 state tax refund, which he used to pay for his attorney and furnishings in his new apartment. (Id. at 29-31). Plaintiff's exhibit two, a statement of account from H&R Block Advantage, confirmed the amount of the refunds. (Plaintiff's Ex. 2). Jerry also testified that he did not place tax refunds into an escrow account as ordered by the

court since he had already filed his taxes and purchased his furniture prior to the court's order. (Id. at 29). Lisa, on the other hand, testified that she did not file her 2006 taxes since she was waiting for the court to determine how the taxes would be filed. (Id. at 141). Lisa testified that Jerry did not give her any of the 2006 tax refunds he received, though she believed she was entitled to half. (Id. at 141-42). Lisa testified that they generally received around a $7,000.00 tax refund when they filed their taxes jointly. (Id. at 215).

{¶26} Based upon this evidence, the trial court found that:

> **The Plaintiff has not filed her 2006 taxes. Defendant has filed his 2006 taxes and has claimed the minor child, Danielle, and his other daughter not of this marriage. Defendant received a federal refund in the amount of $5,022.00 and a refund from the State of Ohio in the amount of $354.00. The Defendant did not divide any refund received by him with Plaintiff.**
> **The parties are ORDERED to file, and/or amend their 2006 tax returns in such a way as to maximize the net refund for the Parties or minimize the net liability of the Parties. The parties shall pay any net taxes owed by the Parties equally and any net refunds shall be divided equally between the Parties. The filing and/or refilling of the 2006 taxes shall be done within 21 days of the filing of the final judgment entry filed herein. The Parties shall cooperate in filing the 2006 taxes.**
> **The Parties shall cooperate to file their 2007 taxes in such a way as to maximize the net refund for the Parties or minimize the net liability of the Parties. The Parties shall equally pay any net taxes owed by the Parties for 2007 and any net refunds shall be equally divided between the Parties.**

(Feb. 13, 2009 JE, Doc. No. 60).

{¶27} Based upon our review of the record, we cannot conclude that the trial court abused its discretion. The evidence established that Jerry filed his 2006 taxes, claiming the parties' minor child, and received a substantial refund, which he failed to share with Lisa. The evidence also supported finding that the parties would likely see an increased return if they amended their 2006 tax return to file jointly. That being said, the trial court only ordered that they re-file or amend the 2006 return "as to maximize the net refund * * * or minimize the net liability," and we believe that was reasonable under the circumstances. (Feb. 13, 2009 JE, Doc. No. 60). See *Andrew*, 3d Dist. No. 7-96-04, at *6-7. We also find no abuse of discretion in ordering the parties to cooperate on filing their 2007 tax returns since the final hearing occurred in September 2007, and the final order of divorce was not entered until February 2009. (Id.). Income that was earned prior to the final hearing is considered marital property, and since the final hearing was in September, it was reasonable to order the parties to cooperate in filing their 2007 tax returns. R.C. 3105.171(A)(2)(a). Furthermore, the trial court did not specifically order how they should file the 2007 returns, except to maximize the refund or limit their liability. Accordingly, the trial court did not abuse its discretion in ordering the parties to cooperate in filing their 2007 tax returns and amending or re-filing their 2006 tax returns.

{¶28} Jerry's fourth assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED AS A RESULT OF FINDING THAT THE APPELLEE'S JEWELRY WAS HER SEPARATE PROPERTY AND BY DENYING APPELLANT'S REQUEST TO HAVE THE REMAINING ITEMS OF JEWELRY APPRAISED WHEN APPELLEE FAILED TO DELIVER SAME TO THE APPRAISER.**

{¶29} In his fifth assignment of error, Jerry argues that the trial court erred by awarding Lisa her jewelry as separate property. Jerry further argues that the trial court erred by failing to order Lisa to deliver the remaining pieces of her jewelry to the appraiser. Lisa argues that the evidence at the hearing established that Jerry had given her the jewelry as gifts; and therefore the jewelry was properly determined to be her separate property. We agree with Lisa.

{¶30} R.C. 3105.171(A) provides, in pertinent part:

**(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:**
**\* \* \***
**(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.**

"Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118.

- 21 -

**{¶31}** At the final hearing, Jerry testified regarding the jewelry as follows:

**Q: And you gave your wife this jewelry, is that correct?**
**A: Correct.**
**Q: And the first thing you indicated as to jewelry was a bridal set. Was that not her engagement ring?**
**A: Yeah.**
**Q: Okay. And the engagement ring you don't consider a gift to her when you asked her to marry you?**
**A: There is a difference there, because she never got to put that ring on until the day we got married.**
**Q: So, the difference is what? It wasn't a gift?**
**A: Marital assets.**
**Q: It's a marital asset. A wedding ring is a marital asset? That's your testimony?**
**A: Yep.**
**Q: Okay. And you said my wedding band.**
**A: Wedding band she gave me.**
**Q: That's a marital asset according to you, not a gift?**
**A: Correct.**
**Q: Okay. The diamond tennis bracelet?**
**A: Blue sapphire diamond tennis bracelet.**
**Q: You gave that to you wife?**
**A: Yes.**
**Q: Eighteen caret gold tennis bracelet you gave that to your wife?**
**A: Yes.**
**Q: Half diamond heart necklace?**
**A: Half caret.**
**Q: Okay. You gave that to your wife?**
**A: Yep.**
**Q: A watch with diamonds on it. You gave that to your wife?**
**A: Correct.**
**Q: And the diamond pendent necklace with ruby caret earrings?**
**A: Correct.**
**Q: Gave that to your wife, correct?**
**A: Correct.**
**\* \* \***
**Q: These are things that you gave her during and over the ten year marriage when you and Lisa resided together?**

> **A: Correct.**
> **Q: Some of these items, were they given for special occasions? Christmas, birthdays, Mother's Days, holidays?**
> **A: Nope.**
> **Q: Just over the course of your marriage because you wanted your wife to have these things?**
> **A: Right.**

(Sept. 4, 2007 Tr. at 105-07). Likewise, Lisa testified:

> **Q: Now your husband testified this morning to several items of jewelry. Is jewelry on that list?**
> **A: No.**
> **Q: Why not?**
> **A: Because it's a gift. He gave them to me. He loved me back when, and he gave those items as gifts. I don't consider them --**
> **Q: In fairness, did you ever purchase gifts for your husband during your marriage when you all were together?**
> **A: Jewelry?**
> **Q: Any kind of gifts?**
> **A: Yeah.**
> **Q: Did you ever buy him jewelry?**
> **A: No. Well, he sent me a time or two to buy a watch for himself. He wanted me to go out and pick it up for him.**
> **Q: To your knowledge does he still own that watch?**
> **A: I think so.**
> **Q: And it's not on any of these lists, why not?**
> **A: It didn't cost that much.**
> **Q: And any other gifts that you bought your husband during the entire time you were married and living together?**
> **A: I bought gifts for him.**
> **Q: Are they on any list?**
> **A: No.**
> **Q: Why not?**
> **A: I don't know.**
> **Q: You consider gifts marital property?**
> **A: No. Yeah, gifts are not marital property. Gifts are gifts.**

(Id. at 171-72). Based upon both parties' testimony, we conclude that the trial court had clear and convincing evidence that Lisa's jewelry was given to her as gifts by Jerry during the course of the marriage. *Pudlo v. Pudlo* (June 29, 2001), 3d Dist. No. 5-2000-29, at \*1. We also note that there was no evidence that these gifts were conditional. See id. As such, we cannot conclude that the trial court abused its discretion by failing to designate Lisa's jewelry as marital property, nor can we conclude that the trial court erred by failing to order Lisa to deliver her remaining jewelry to be appraised. The trial court also properly ordered that Jerry was entitled to keep his jewelry, namely his wedding band. (Feb. 13, 2009 JE, Doc. No. 60).

**{¶32}** Jerry's fifth assignment of error is, therefore, overruled.

**{¶33}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed.*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jnc**