[Cite as *Remington v. Remington*, 2011-Ohio-4326.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

VIRGINIA C. REMINGTON,

    PLAINTIFF-APPELLEE,              CASE NO. 10-11-08

    v.

JOHN F. REMINGTON, JR.,            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Domestic Relations Division
Trial Court No. 10-DIV-017

**Judgment Affirmed**

Date of Decision: August 29, 2011

APPEARANCES:

    *William E. Huber* **for Appellant**

    *Thomas Luth* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, John F. Remington, Jr. (hereinafter "John"), appeals the Mercer County Court of Common Pleas' judgment entry of divorce from his former wife, plaintiff-appellee, Virginia C. Remington (hereinafter "Virginia"). For the reasons herein, we affirm.

{¶2} John and Virginia were married on August 30, 1986. (Aug. 9, 2010 Tr. at 32, 123). On March 15, 2010, Virginia filed a complaint for divorce. (Doc. No. 3). Two children were issue of the marriage: Constance and John III; at the time of the final divorce hearing, John III was a minor but Constance was not. (Id. at 33, 123).

{¶3} On August 9, 2010, the matter came on for final hearing. (Doc. No. 25). John had not yet provided account statements/records reflecting the present-day value of his pension plan, IRA, and 401(k) through discovery, so the parties stipulated at the final hearing that John would supplement the record with those account statements/records. (Aug. 9, 2010 Tr. at 195); (Doc. No. 30).

{¶4} On August 25, 2010, John filed a supplement to the record with statements from his ITW Savings and Investment Plan, T. Rowe Price IRA account, and Minster Machine Company Consolidated Pension Trust Account. (Doc. No. 31).

{¶5} On November 17, 2010, the magistrate issued her decision granting the parties a divorce. (Doc. No. 40). On November 29, 2010, John filed a motion to extend time for filing objections, which the trial court granted. (Doc. Nos. 42-43).

{¶6} On January 21, 2011, John filed objections. (Doc. No. 46). On February 15, 2011, the trial court sustained John's objections, in part, amended the magistrate's decision, and adopted the decision as amended. (Doc. No. 49).

{¶7} On March 8, 2011, John filed a notice of appeal, but this Court dismissed the appeal for lack of a final order on March 21, 2011. (Doc. Nos. 61, 68). On March 21, 2011, the trial court issued a final divorce decree. (Doc. No. 69). On March 25, 2011, John filed another notice of appeal. (Doc. No. 77).

{¶8} John now appeals raising three assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY CONCLUDING THAT THE 1999 BONNEVILLE HAD A VALUE OF $1,000.00.**

{¶9} In his first assignment of error, John argues that the trial court erred by valuing his 1999 Pontiac Bonneville at $1,000.00 when the magistrate determined that the car had no value based upon the hearing testimony.

{¶10} A trial court's valuation of marital property will not be reversed absent an abuse of discretion. *Kilpatrick v. Kilpatrick*, 5th Dist. No. 10 CAF 09

0080, 2011-Ohio-443, ¶35. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶11} Virginia identified plaintiff's exhibit nine (9) as the Kelly Blue Book valuation report of John's Pontiac Bonneville. (Aug. 9, 2010 Tr. at 40-41). Based upon that valuation report, Virginia testified that John's Bonneville was worth $2,315.00. (Id. at 41). John, on the other hand, disputed the accuracy of Plaintiff's exhibit nine (9), because the exhibit reflected the value of a 2000 Pontiac Bonneville with 150,000 miles, and his car was actually a 1999 Pontiac Bonneville with 225,000 miles. (Id. at 129). John testified that "the car is worthless * * *. It's got 225,000 miles on it. If you can get a grand for it you'd be lucky." (Id.).

{¶12} In her decision, the magistrate found that John was more credible than Virginia on the value of the car since John was the primary driver. (Doc. No. 40). As such, the magistrate found that the 1999 Pontiac Bonneville had no marital value. (Id.). However, in the calculation sheet attached to her decision from which she calculated the division of marital assets, the magistrate listed the value of John's "2000 Pontiac" as $2,315.00. (Id., attached). In light of this discrepancy, John filed an objection to the magistrate's decision arguing that the value of his car should be zero dollars. (Doc. No. 46, Objection #1). Upon review of the record, the trial court agreed with John that the value of his vehicle should

not be $2,315.00 as used in the magistrate's calculation sheet; however, the trial court disagreed with John and the magistrate that the value of his car was zero dollars. (Feb. 15, 2011 Entry, Doc. No. 49). Instead, the trial court found that John's car had a value of $1,000.00 based upon John's testimony at the hearing. (Id.). Since John testified that one could possibly get $1,000.00 for the car, the trial court's decision is supported by competent, credible evidence, and therefore, not an abuse of its discretion. *Kindig v. Kindig*, 3d Dist. No. 1-10-13, 2010-Ohio-4805, ¶18.

{¶13} John's first assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED AND ABUSED IT'S [SIC] DISCRETION BY IMPUTING INCOME TO THE DEFENDANT-APPELLANT BY FAILING TO APPLY THE CRITERIA SET FORTH IN OHIO REVISED CODE §3119.01(11).**

{¶14} In his second assignment of error, John argues that the trial court erred by imputing $40,000.00 in annual income to him without any consideration of R.C. 3119.01(11).

{¶15} The record reflects that the trial court's calculation of John's income was for purposes of determining child support. A trial court's decision regarding child support obligations will not be disturbed on appeal absent an abuse of discretion. *Thacker v. Thacker*, 3d Dist. No. 9-10-26, 2010-Ohio-5675, ¶54,

citations omitted. To determine the proper amount of child support, R.C. 3119.01(C)(5) provides, in pertinent part, that:

> **(5) "Income" means either of the following:**
>
> **(a) For a parent who is employed to full capacity, the gross income of the parent;**
>
> **(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.**

"A determination of 'potential income' under R.C. 3119.01(C)(11), requires the trial court to first find that the parent is voluntarily unemployed or underemployed before it may impute income for child support calculation purposes." *Thacker*, 2010-Ohio-5675, at ¶56, citing *Smart v. Smart*, 3d Dist. No. 17-07-10, 2008-Ohio-1996, ¶21, citing *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218.

{¶16} Neither the magistrate nor the trial court ever made a finding that John was unemployed or underemployed for purposes of imputing income to him under R.C. 3119.01(C)(11); rather, the magistrate and the trial court calculated John's actual income based upon the limited testimony presented by the parties at the hearing. See *Thacker*, 2010-Ohio-5675, at ¶56. John testified that: he earns forty percent (40%) of the total commission earned by his employer; that his employer's commission is ten percent (10%) of total sales; and that he had pending sales of $1,000,000.00. (Aug. 9, 2010 Tr. at 171-82). Based upon these

numbers, the trial court determined that John's annual income was $40,000.00 ($1,000,000.00 in total sales x 10% commission = $100,000.00 total commission (employer's portion) x 40% (John's portion of employer's commission) = $40,000.00). (Feb. 15, 2011 Entry, Doc. No. 49). Since the trial court's calculation of John's income was based upon competent, credible testimony, we cannot conclude that the trial court abused its discretion in calculating John's annual income at $40,000.00 for purposes of its child support calculation. *Kindig*, 2010-Ohio-4805, at ¶18.

{¶17} John's second assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED AND ABUSED IT'S [SIC] DISCRETION IN DIVIDING THE RETIREMENT AND PENSION PLANS BY USING A FUTURE VALUE AND NOT A PRESENT MARITAL VALUE.**

{¶18} In his third assignment of error, John argues that the trial court erred in dividing the parties' retirement funds by using the future value of John's pension plan, instead of the pension plan's present-day value.

{¶19} The division of a pension or retirement benefit must be left to the trial court's broad discretion. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 180, 559 N.E.2d 1292. "The trial court must have the flexibility to make an equitable decision based upon the circumstances of the case, the status of the parties, the

nature, terms and conditions of the pension plan, and the reasonableness of the result." Id.

**{¶20}** The testimony at the final hearing regarding John's retirement benefits and pension was limited. Virginia identified plaintiff's exhibit twenty-two (22) as a statement from John's ITW Savings and Investment Account, which John earned while he worked at ITW. (Aug. 9, 2010 Tr. at 58-59). The statement is dated for the period of October 1, 2009 to December 31, 2009 and shows a balance of $3,879.08 in the account. (Id.); (P's Ex. 22). John testified that he had "about $3,000" in this account. (Aug. 9, 2010 Tr. at 152). Virginia identified plaintiff's exhibit twenty-three (23) as a statement from John's T. Rowe Price 401(k). (Id. at 59). This statement reflects a balance of $42,263.35 as of June 30, 2008. (P's Ex. 23). John testified that his T. Rowe Price account had "like $37,000" in it at the time of the hearing. (Aug. 9, 2010 Tr. at 155). John also testified that he had a pension from working at Minster Machine Company, though he could not testify concerning his pension's present-day value. (Id. at 152, 194-95).

**{¶21}** At the close of the hearing, the parties stipulated that John would supplement the record with the "current appraised value" of his 401(k) and IRA and supplement the record with "whatever [he] [could] get in writing regarding the defined benefit plan." (Id. at 196-97). On August 25, 2010, John supplemented

the record with statements showing his ITW Savings and Investment plan was valued at $3,510.28 as of June 30, 2010 and his T. Rowe Price Account was valued at $34,329.07 as of June 2010. (Doc. No. 31). The document John filed concerning Minster Machine Co. Consolidated Pension showed that, if a lump sum was distributed, John would receive $77,511.50 if he retired at fifty-five (55) or $119,594.70 if he retired at sixty-five (65). (Id.).

{¶22} The magistrate determined that the value of John's Minster Machine Co. Pension was $119,594.70 for purposes of dividing the marital assets, using the value of John's pension when he reached age sixty-five (65). (Nov. 17, 2010 Decision, Doc. No. 40). John filed an objection to the magistrate's decision arguing that the magistrate should have reduced John's pension to a present-day value for purposes of dividing the marital assets. (Doc. No. 46). The trial court disagreed and adopted the magistrate's decision. (Feb. 15, 2010 Entry, Doc. No. 49).

{¶23} We find no abuse of discretion in the trial court's valuation of John's pension. As an initial matter, the record indicates that John's employment at Minster Machine Co. was exclusively during the marriage. (Aug. 9, 2010 Tr. at 159-63); (P's Ex. 35). Therefore, all of the funds in the Minster Machine Co. Pension were marital assets. *Hoyt*, 53 Ohio St.3d at 178. To divide the parties' retirement assets, the trial court decided to issue a QDRO ordering that a portion

of John's retirement benefits be paid from his T. Rowe Price IRA account to Virginia upon the earliest of: (1) John's death; (2) John's retirement; (3) John's termination from the plan's sponsor and its affiliates; (4) Virginia's consent to the lump sum distribution; or (5) Virginia's request to roll the funds over to another qualified account. (Doc. No. 70). Issuing a QDRO ordering that payment be made to the spouse at a later time is one of the equitable alternatives available to the trial court for dividing retirement assets. *Sprankle v. Sprankle* (1993), 87 Ohio App.3d 129, 133, 621 N.E.2d 1310; 46 Ohio Jurisprudence 3d (2011) Family Law, Section 449. Since the trial court chose this method of dividing the parties' retirement assets, the trial court was not required to determine the present-day value of John's Minster Machine Co. pension. As the Court in *Sprankle*, supra, stated:

> **No purpose would have been served in this case in determining a present value for the pension fund. A present value must be determined if that value is going to be immediately divided through liquidation of the fund, by being offset against other marital assets, or through periodic payments by one spouse to the other. When, as in this case, the division is not going to occur until benefits are paid, it is the projected amount of those payments that is critical, not the value at the time of the hearing.**

87 Ohio App.3d at 134-35. Therefore, we cannot conclude that the trial court abused its discretion by determining that the value of John's Minster Machine Co. Pension was $119,594.70—the value of the pension when John was sixty-five (65) years old and when the benefits would likely be paid. Upholding the trial court's

decision in this respect is further warranted in this case, because John failed to present evidence of his pension plan's present-day value during discovery and as later ordered by the trial court. As such, John is precluded from even arguing this issue under the invited error doctrine. *Dindal v. Dindal*, 3d Dist. No. 5-09-06, 2009-Ohio-3528, ¶9.

{¶24} For these reasons, John's third assignment of error is overruled.

{¶25} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ROGERS, P.J., concurs.**

**WILLAMOWSKI, J., concurs in Judgment Only as to Assignment of Error No. III.**

**/jlr**